Argued and submitted June 5, reversed and remanded for reconsideration
December 13, 1989

# DOUGLAS COUNTY,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION et al,
*Respondents.*

(88 AB 1398; CA A50345)

783 P2d 1019

Clifford W. Kennerly, Assistant County Counsel, Roseburg, argued the cause and filed the brief for petitioner.

Suanne E. Lovendahl, Roseburg, argued the cause and filed the brief for respondent Dione J. Burkhart.

No appearance for respondent Employment Division.

Before Graber, Presiding Judge, and Deits and Edmonds, Judges.

DEITS, J.

## DEITS, J.

Petitioner seeks review of an Employment Appeals Board (EAB) order affirming the referee's order that granted claimant benefits. EAB concluded that claimant had voluntarily left work with good cause. ORS 657.176(2)(c). We reverse and remand.

EAB found:

"(1) Claimant worked for employer from August 15, 1977 until she quit effective July 23, 1987. (2) She was a custodian and her job duties involved sweeping, light mopping, vacuuming, dumping garbage and other custodial tasks. (3) Claimant was very dedicated to her job and performed her tasks well. (4) During claimant's first pregnancy, as well as during recovery from a back injury, she was on light duty and was able to perform her tasks without hurting herself or her baby. (5) Her second pregnancy was different for claimant. She found out she was pregnant in June 1987. She was experiencing severe diarrhea, vomiting, weakness and loss of energy. (6) On July 7, claimant informed employer of that fact, but supplied them with a letter from her doctor stating she was able to perform her regular job. It was not until July 15 that claimant secured a light-duty letter from her doctor.

"(7) Employer met with claimant and went over her light duty procedures. She was to perform her regular duties, but not use the large vacuums, do heavy lifting or use buffers. (8) Employer told claimant she was the only one to judge if she should perform a specific task or rest. Claimant was instructed to do only what she felt she could do and tell employer if there was a problem. (9) Employer did not harass claimant or unduly criticize her work. (10) Employer did not request claimant [to] perform any task she was unable to perform. If employer had made such a request and claimant had brought it to their attention, employer would have respected claimant's protestations and worked around claimant's condition.

"(11) Even before claimant's second pregnancy, she had been acting highly emotional and was subject to bouts of uncontrollable crying and nervousness. (12) For the past year, she had been unusually sensitive to suggestions and often viewed simple suggestions as criticism of her work. Employer even referred claimant to a counselor to help alleviate this condition. (13) After claimant left work, she was diagnosed as having gestational diabetes.

"(14) The last incident leading up to claimant's resignation occurred July 22 or 23, 198[7]. (15) Claimant's supervisor asked claimant how she was doing. Claimant responded she had only done a portion of the vacuuming. He then requested that she vacuum some more. (16) Claimant felt she was being criticized for not vacuuming when she was unable; however, she did not tell employer she was physically unable to vacuum at that time and instead went to her vacuum and started pushing it roughly around the floor. (17) Employer observed this and requested that she shut the vacuum off. Claimant refused, stating that she had been ordered to vacuum and she would do it. (18) Claimant was upset and crying by this time.

"(19) On July 23, claimant's supervisor, the department head and claimant met in the office. (20) At that meeting, employer was attempting to calm claimant and clarify that they were not criticizing her or ordering her to do things she physically should not. Employer explained that they expected her not to be upset so easily, communicate better and tell employer each time she was unable to do a particular task based on her physical condition. (21) Claimant continued to be emotional and crying during the meeting and quit at that time, offering her two-weeks resignation notice. (22) Claimant quit because of the severe stress she was under, caused by her physical and mental condition, based upon her perception that employer was picking on her and ordering her to do things that might hurt her and her baby. (23) After claimant quit this job, she was unable to work until after February, 1988. Claimant did not apply for unemployment benefits until June, 1988."

EAB concluded that petitioner had left work with good cause because the work was unsuitable. It explained:

"Claimant suffered from emotional and physical difficulties. She was highly emotional and subject to bouts of uncontrollable crying and nervousness. She was unusually sensitive to criticism. She also experienced severe diarrhea, vomiting, weakness and loss of energy as a result of her pregnancy. We conclude that the claimant's mental and physical conditions were such that they presented a risk involved to her health as contemplated in ORS 657.190. The claimant's testimony was that she was physically and mentally unable to work until after February, 1988. For these reasons, we find that the work was unsuitable and that disqualification is not appropriate."

ORS 657.176(2)(c) provides that a person is disqualified from unemployment benefits if the individual "voluntarily left work without good cause." Division's administrative

rules provide that, in determining disqualification, the Administrator shall give consideration to the "suitable work factors" in ORS 657.190, which provides:

> "In determining whether or not any work is suitable for an individual, the assistant director shall consider, among other factors, the degree of risk involved to the health, safety and morals of the individual, the physical fitness and prior training, experience and prior earnings of the individual, the length of unemployment and prospects for securing local work in the customary occupation of the individual and the distance of the available work from the residence of the individual."

If a claimant's work is found to be unsuitable, it cannot be concluded that the individual has left work without good cause. *Dooley v. Employment Division,* 88 Or App 609, 612, 746 P2d 750 (1987).

■ Petitioner argues that EAB erred in concluding that claimant's work was unsuitable. Petitioner first contends that there was no rational relationship between EAB's findings and its conclusion that claimant's work posed a risk to her health. We agree. EAB found that, although claimant was experiencing difficulties with her pregnancy, her physician had concluded that she was able to perform light duty work and that petitioner was willing and able to accommodate her need for light duty work and had done so in the past. Nonetheless, EAB concluded that, because of her emotional condition and the physical problems resulting from her pregnancy, claimant's work posed a risk to her health.

An administrative agency is required to state clearly and precisely what it finds to be the facts and why those facts rationally lead to the decision that it makes. *Ruiz v. Employment Division,* 83 Or App 609, 613, 733 P2d 51 (1987). Here, as EAB found, the medical evidence and claimant's job history indicate that, even with her limitations, she could perform light duty work. EAB failed to explain why those findings do not lead to the conclusion that she was able to perform the job with the accommodations that her employer was willing to make.[1]

---

[1] Petitioner also contends that EAB failed to address other factors in ORS 657.190 concerning suitability, specifically, claimant's training and experience. As discussed above, claimant's experience on the job would be relevant in determining whether the work posed a health risk. However, because the crucial issue was whether claimant's health allowed her to perform the job without serious risk, this factor would not have to be treated as a separate consideration under ORS 657.190.

■     Petitioner also argues that EAB failed to make a finding regarding a medical report of her treating physician in which it was said that claimant was able to work at the time she left her job. The report was made in January, 1988, after the birth of her child and after she had left work. An agency is not required to make a finding of fact on all evidence received.[2] However, it must make findings on all essential facts and pertinent issues. *Ruiz v. Employment Division, supra,* 83 Or App at 613. Here, claimant's ability to work was directly at issue. She testified that her mental and physical condition prevented her from performing the job. The January medical report directly contradicted claimant's assertions. EAB should have made a finding concerning the report and if, on remand, it still concludes that the work was unsuitable, it should explain why the report was not persuasive that claimant could have performed the work.

Finally, petitioner asserts that EAB erred in not considering evidence that claimant had options that were less severe than quitting, *e.g.,* taking sick leave or undergoing counseling as suggested by petitioner or taking advantage of the jobs offered by petitioner. As discussed above, the accommodations were relevant to determining if the job posed a risk to claimant's health and, consequently, whether the work was suitable. However, alternatives to leaving work are considered as a part of the determination under ORS 657.176(2) whether a claimant left work without good cause, not the suitability of the work.

Reversed and remanded for reconsideration.

---

[2] There are instances, however, such as in *Hoss v. AFSD,* 79 Or App 640, 719 P2d 1316 (1986), when an agency is required by statute or rule to address certain evidence, such as medical reports, specifically.